Fletcher *v.* Shapp, et al.

Argued April 4, 1972, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Louis P. Vitti,* for plaintiff.

*Curtis M. Pontz,* with him *Leonard Packel,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for defendants.

OPINION BY JUDGE CRUMLISH, JR., June 20, 1972:

Fletcher, invoking original jurisdiction,[1] filed a complaint in trespass naming the Governor and the Attorney General as defendants. They in turn filed preliminary objections in the nature of demurrers. We sustain.

The undisputed facts are that plaintiff was convicted of murder and sentenced to life imprisonment in 1954. In 1961 this judgment was reversed and plaintiff was granted a new trial which resulted in acquittal. He had served approximately eight years in prison.

In 1966, plaintiff was sentenced to from 10½ to 24 years after having been convicted on bills of indictment

---

[1] Act of July 31, 1970, P. L. 673, No. 223, Art. IV, §401, 17 P.S. §211.401. The action here is not a habeas corpus proceeding but a complaint in trespass against the Governor and Attorney General.

unrelated to the earlier offense. He is now confined on this sentence.

In his Complaint, plaintiff seeks credit for time served on the invalidated 1954 sentence and would have defendants apply it to his current misfortune. He also asks for monetary damages in compensation for the time he served on the 1954 sentence.

Plaintiff would have us overlook the crucial factors in his predicament. His sentences were for different, unrelated crimes and further the sentences were neither concurrent nor consecutive. Under these circumstances, the law is unmistakably clear that Fletcher is not entitled to credit for the time he served under the voided sentence. His later conviction for a new offense constituted an entirely new ball game.

*Davis v. U.S. Attorney General,* 432 F. 2d 778 (5th Cir. 1970), involved a petition in mandamus for a recomputation of jail time similar to the instant case. The Fifth Circuit Court of Appeals said: "The basis of appellant's contention is that while serving time under an invalid sentence he managed to earn credit against a future unrelated sentence for a crime not yet perpetrated. We cannot accept such a proposition. An allowance for prison time previously served under a void commitment does not reduce sentences imposed as a *result of new and different crimes.* . . . The [state imposed] sentence therefore remains undisturbed since it was incurred for the commission of an offense unrelated to the original crime and not even in existence when appellant earned the credit in the [state] penitentiary." (Emphasis supplied)

*U.S. ex rel. Watson v. Commonwealth and Common Pleas Courts of Pennsylvania,* 260 F. Supp. 474 (E.D. Pa. 1966) also involved a petition for credit for time served under an illegal sentence against the time to be served under an unimpeached sentence. The U.S. Dis-

trict Court for the Eastern District of Pennsylvania stated: "While we are somewhat sympathetic to relator's situation, we cannot conceive of a constitutionally mandated system of accumulated prison credits. Other courts have concurred in our incredulity, [citations]. Such a requirement of credit for time served under vacated sentences would enable recidivists to obtain release or to avoid incarceration altogether by the simple device of pleading a prior invalid imprisonment. . . . However unfortunate and even tragic relator's confinement under the illegal 1948 sentence might have been, it cannot excuse his later criminal conduct. A sentencing court or parole board may want to consider the fact of Watson's long confinement under the vacated judgment as bearing on the severity of sanctions to be imposed for later offenses. But our standards of collateral review do not permit interference with such discretionary state criminal procedures in the ordinary case. . . ." 260 F. Supp. at 475.

A recitation of some of the jurisdictions subscribing to this rule includes: *Holscher v. Young,* 440 F. 2d 1283 (8th Cir. 1971) ; *Blackwell v. U.S.,* 438 F. 2d 518 (5th Cir. 1971) ; *Tucker v. Peyton,* 357 F. 2d 115 (4th Cir. 1966) ; *Johnson v. Henderson,* 328 F. Supp. 704 (E.D. La. 1971) ; *Mize v. U.S.,* 323 F. Supp. 792 (N.D. Miss. 1971) ; *Thacker v. Peyton,* 289 F. Supp. 368 (N.D. Va. 1968) ; *Bauers v. Yeager,* 261 F. Supp. 420 (D. N.J. 1966).

The cases cited by plaintiff involve situations where either the sentences were concurrent or consecutive, where the earlier sentence had an impact on the later sentence or where the sentences involved the same or related offenses.

Although the defendants are in no way responsible for the incarceration in 1954, plaintiff would have this Court order them in their capacity as representatives

of the Commonwealth to compensate him for time lost during that period. There is no authority for such an order. Notwithstanding any injury which may have occurred to the plaintiff during his unwarranted incarceration, the Judiciary is powerless to provide the remedy sought herein.

Fletcher may go to the Legislature. Should he convince it that he was the victim of injustice, a special appropriation could be made by the General Assembly.[2]

In accordance with the foregoing, we issue the following

### ORDER

AND NOW, this 20th day of June, 1972, the Preliminary Objections of the defendants, Milton J. Shapp, J. Shane Creamer, the Commonwealth of Pennsylvania, et al., are hereby sustained.

Judge WILKINSON, JR. concurs in the result only.

---

[2] Also, a general appropriation bill now pending before the House may, if acted upon, benefit the plaintiff. *See* House Bill No. 2164, 1972 Session; Introduced May 15, 1972. This bill would appropriate $133,000 to the Department of Justice for the payment of moral claims arising from wrongful imprisonment.